BARKDULL, Judge.
Appellant executed an agreement of guaranty in connection with a loan from National Industrial Bank of Miami to Great Southern Wholesale Grocery Corporation, for the purpose of purchasing two forklifts.
The Bank assured the guarantor that it would cause the necessary Uniform Commercial Code documents to be filed against the two fork lifts, in order to perfect its security interest therein. The Bank failed to promptly or properly do this and therefore lost a security interest in the chattels. The principal obligor went into bankruptcy and the Bank failed in a reclamation procedure for return of the fork lifts.[1] The Bank *440 then brought suit on the guaranty. The guarantor defended and urged that it was released because of the failure of the bank to perfect its security interest or to properly preserve the collateral. The trial court entered judgment for the unpaid amount of the loans. This appeal ensued. We reverse.
It was incumbent upon the Bank to take all normal precautions to perfect all security interest in the fork lifts. Failure to properly preserve the collateral justifies a release of the guarantor to the extent that he was damaged by the loss of the collateral. Miami National Bank v. Fink, 174 So.2d 38 (Fla. 3d DCA 1965); Dorsy v. Maryland National Bank, 334 So.2d 273 (Fla. 3d DCA 1976); Warner v. Caldwell, 354 So.2d 91 (Fla. 3d DCA 1977).
Therefore, the final judgment here under review be and the same is hereby reversed, with directions to the trial court to consider the amount of the obligation that would have been discharged if the security interest in the fork lifts had been properly preserved and these chattels had been disposed of by either satisfaction or partial satisfaction of the original obligation at the time of default.
Reversed and remanded, with directions.

. In its Findings of Fact and Conclusions of Law, the Referee in Bankruptcy in his Order of April 2, 1971 found, in part, as follows:
* * * * * *
“3. That at a hearing held before this Court on December 2, 1970:
“A. The Bank introduced into evidence the very same instruments reflected by the exhibits attached to the Petition of Reclamation, but, the blank spaces appearing on the exhibits were completely filled in by a second typewriter.
“B. Jack Stein, Executive Vice-President of the Bank testified that he was familiar with the transactions in question * * * he was a loan officer responsible for the transactions in question, and that they were made under his control and supervision * *.
“C. Stein further testified that all instruments were filled in at the same time that they were executed, but, due to employee incompetence, more than one typewriter was used * * * all instruments were completed prior to filing the Petition of Reclamation * * * and that blanks appeared on the exhibits because of selective elimination by a faulty photocopy machine * * *.
“4. That at a hearing held before this Court on February 9, 1971, the Senior Vice-President of the Bank, Layton Reeve, testified that:
“A. Reeve was familiar with the transaction in question * * *.
“B. The instruments were signed in March of 1969 * * *.
“C. The instruments were not filled in until October, 1970 * * *.
*440 “D. Stein’s testimony on December 2, 1970 was erroneous * * *.
“5. That in an attempt to prove its claim, the Bank represented to this Court that the exhibits were true copies, when they were not, and willfully attempted to deceive this Court, and did not come before this Court with ‘clean hands’.
* * * * *
“ORDERED AND ADJUDGED that the claim of the National Industrial Bank of Miami is hereby subordinated to the claim of all the secured creditors and the claim shall be allowed as an unsecured claim.”
* SfC # J}5 S(C S)S